# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

CENTER FOR BIOLOGICAL DIVERSITY,

      Plaintiff,

    -vs-                                       Civ. No. 02-1067 LH/RHS

GALE NORTON, Secretary of the Interior, and
STEVE WILLIAMS, Director, United States Fish
and Wildlife Service,

      Federal Defendants,

SALT RIVER PROJECT AGRICULTURAL
IMPROVEMENT AND POWER DISTRICT and
SALT RIVER VALLEY WATER USERS'
ASSOCIATION,

      Defendants-Intervenors.

## MEMORANDUM OPINION

**THIS MATTER** comes before the Court on Plaintiff's Motion for Summary Judgment to

Set a Remand Schedule (Docket No. 25), filed January 31, 2003; Federal Defendants' Cross-Motion

for Summary Judgment (Docket No. 32), filed February 26, 2003; and Salt River Project's Cross-

Motion for Summary Judgment (Docket No. 34), filed February 26, 2003.  The Court, having

considered the Motions, the memoranda of the parties, and the applicable law, having heard the oral

argument of counsel at the Motions hearing on September 17, 2003, and otherwise being fully

advised, finds that  Plaintiff's Motion for Summary Judgment to Set a Remand Schedule is well

taken in part and will be **granted in part**, Federal Defendants' Cross-Motion for Summary Judgment

is not well taken and will be **denied**, and Salt River Project's Cross-Motion for Summary Judgment

is well taken in part and will be **granted in part**.

Much of the relevant history of this matter is set forth in *New Mexico Cattle Growers Ass'n*

*v. United States Fish and Wildlife Service*:

> The Southwestern Willow Flycatcher ("flycatcher"), *empidonax traillii extimus*, is one of four sub-species of the willow flycatcher, a small bird that nests in riparian areas along river beds.  On July 23, 1993, the FWS [the United States Fish and Wildlife Service] published its "Proposed Rule to List the Southwestern Willow Flycatcher as Endangered With Critical Habitat."  58 Fed. Reg. 39495.  On February 27, 1995, the FWS issued its "Final Rule Determining Endangered Status for the Southwestern Willow Flycatcher."  60 Fed. Reg. 10694.  The Final Rule listed the flycatcher as endangered, but deferred the critical habitat designation ("CHD") in order to gather more information.  However, the FWS did not, on its own initiative, move forward with the CHD for the flycatcher.
>
> On March 20, 1997, the U.S. District Court for the District of Arizona, in the case *Southwest Ctr. for Biological Diversity*[1] *v. Babbitt*, Civ. No. 96-1874-PHX-RGS (D. Ariz. March 20, 1997), ordered the FWS to complete the CHD for the flycatcher within 120 days.  Pursuant to the court order, the FWS issued its CHD for the flycatcher on July 22, 1997.  At that time, the known population of the flycatcher was between 300 and 500 nesting pairs spread across seven states and parts of Mexico.   The CHD designated eighteen critical habitat units, including four in New Mexico, totaling 599 miles of stream and river beds.

248 F.3d 1277, 1279-80 (10th Cir. 2001)(footnote added)("*Flycatcher 2*").

The New Mexico Cattle Growers Association and others representing elements of New

Mexico's agricultural industry filed suit against the FWS in this Court in March 1998, challenging

the flycatcher designation and alleging violations of various provisions of the Endangered Species

Act ("ESA") and the National Environmental Protection Act ("NEPA").  *Id.* at 1279, 1280.  On May

---

[1] Plaintiff Center for Biological Diversity was formerly known as  Southwest Center for Biological Diversity.

11, 2001, the appellate court reversed this Court's dismissal in favor of the FWS,[2] "holding that the baseline approach to economic impact analysis [employed by the FWS to determine the effects of the CHD before making a final designation, 16 U.S.C. § 1533(b)(2),] is not permitted by the ESA, thus setting aside the flycatcher critical habitat designation." *Id.* at 1280.  On September 24, 2001, this Court entered its Order remanding the case to the FWS for action not inconsistent with the Tenth Circuit's decision.

Plaintiff Center for Biological Diversity (the "Center") now brings this action pursuant to the citizen suit provision of the ESA, 16 U.S.C. § 1540(g).[3]  In its First Amended Complaint for Declaratory and Injunctive Relief, the Center challenges the failure of the FWS to meet its mandatory, nondiscretionary duty under section 4 of the ESA, 16 U.S.C. § 1533, to designate critical habitat for the flycatcher.[4]

---

[2] *See New Mexico Cattle Growers Ass'n v. United States Fish & Wildlife Serv.*, 81 F. Supp. 2d 1141 (D.N.M. 1999)("*Flycatcher 1*").

[3] The "Citizens suits" provision of the enforcement section of the ESA provides in part:

> (1) Except as provided in paragraph (2) of this subsection any person may commence a civil suit on his own behalf–
> . . . .
> (C) against the Secretary where there is alleged a failure of the Secretary to perform any act or duty under section 1533 of this title which is not discretionary with the Secretary.

The district courts shall have jurisdiction, without regard to the amount in controversy or the citizenship of the parties, . . . to order the Secretary to perform such act or duty . . . .

16 U.S.C. § 1540(g)(1)(C).

[4] Plaintiff concedes its Second Claim for Relief for agency action unlawfully withheld or unreasonably delayed under the Administrative Procedures Act (APA), 5 U.S.C. § 706(1). (Reply Fed. Defs.' and Defs-Intervenors' Resp. Plf's. Mot. Summ. J. and Resp. Fed. Defs.' and Defs-Intervenors' Cross Mots. Summ. J. at 8 n.2 ("[T]he Center concedes that in the Tenth circuit it is settled that the APA does not provide a separate claim for relief, but only provides the standard of review for the Center's ESA citizen suit claim.").)

Motions for summary judgment by all of the parties to this case are now before the Court. In its Motion for Summary Judgment to Set a Remand Schedule, Plaintiff requests that the Court declare that the Federal Defendants have violated the ESA by failing to re-designate critical habitat for the flycatcher; and order the FWS to issue a proposed rule to designate critical habitat for the flycatcher by May 24, 2003, and a final rule designating critical habitat for the flycatcher by September 24, 2003.[5]

Federal Defendants move for summary judgment on grounds that Plaintiff has failed to set forth the elements of a valid claim under the ESA, thereby necessitating dismissal of its First Amended Complaint. Alternatively, if the Court is inclined to modify its remand Order in Flycatcher 1 or the Court finds that the FWS has violated a nondiscretionary statutory duty in this instance and relief is appropriate, Federal Defendants ask the Court to base the remand schedule on the assumption that work on the designation would not begin in this fiscal year, FY 2003. The FWS contends that the earliest reasonable compliance deadline for submission of a final rule is September 30, 2005, or December 31, 2005, if a NEPA Environmental Impact Statement ("EIS") is necessary. Federal Defendants further maintain that given the uncertainty of future appropriations and the strong possibility that the FWS will not actually have sufficient funding to begin work on the designation in FY 2004, any order should explicitly acknowledge that the Court will entertain a motion to amend these deadlines, if necessary, when the FWS's FY 2004 and/or FY 2005 budgets are finalized by Congress.

---

[5] At oral argument, counsel for Plaintiff stated that it now requests that the Court order the FWS to issue the final rule designating critical habitat for the flycatcher within one year.

Defendants-Intervenors Salt River Valley Water Users' Association, a political subdivision of the State of Arizona, and Salt River Project Agricultural Improvement District, a private Arizona corporation, (collectively, "SRP") also have filed a cross-motion for summary judgment.[6] Although SRP joins, without further discussion, in Federal Defendants' position that the FWS is not in violation of the ESA, the major issue SRP addresses is the appropriate schedule for completion of the critical habitat designation. SRP requests that the Court order the FWS to publish a proposed critical habitat designation, draft EIS, and draft economic analysis within one year of the Court's order and a final critical habitat designation, EIS, and economic analysis within one year thereafter.

Initially, the Court finds that Plaintiff's suit is properly before it, pursuant to the citizen-suit provision of the ESA. The FWS's contention that it has forever satisfied its nondiscretionary duty under the ESA because it issued a defective critical habitat designation for the flycatcher that was set aside by the Tenth Circuit as "not in accord with the language or intent of the ESA," *Flycatcher II*, 248 F.3d at 1285, is untenable. Clearly the ESA imposes a nondiscretionary duty upon the FWS to designate critical habitat for endangered or threatened species, pursuant to the criteria and procedures set forth in the ESA, including the time limits. *Id.*; *Forest Guardian*. 174 F.3d at 1193. Just as clearly, there is presently no designation of critical habitat, proposed or final, for the endangered

---

[6] SRP operates six storage reservoirs and dams on the Salt and Verde Rivers in central Arizona. Water impounded in SRP's storage reservoirs is subsequently delivered to consumers in the Phoenix metropolitan area. SRP's interest in this suit stems from the presence of flycatchers at Roosevelt Lake, which provides over 70 percent of SRP's total surface water storage space. Due to dry conditions over the past number of years and resulting lower water levels, riparian vegetation has followed the receding shoreline into what would be in non-drought periods the storage area of the reservoir. Animals that use riparian habitat have followed the vegetation growth into the confines of the lake, including a population of nesting flycatchers. In July 2002, SRP applied to the FWS for a permit, pursuant to Section 10 of the ESA, for the incidental "take" of the flycatcher and three other birds, which would occur with the inundation of occupied habitat upon filling of the reservoir. In February 2003, Roosevelt Lake was at only fifteen percent of its storage capacity.

flycatcher and there has been none since Tenth Circuit set aside the original designation in 2001.

Certainly the mandatory, nondiscretionary duty to designate critical habitat within the statutory

deadline cannot be discharged by issuance of a defective rule, and this Court will not so find.

Upon vacatur of the original designation, then, the FWS was immediately in violation of its

duty to designate critical habitat for the flycatcher, and under controlling precedent in this Circuit,

was required to reissue the critical habitat designation "as soon as possible," taking into consideration

"what work is necessary to publish the new rule and how quickly that can be accomplished." *Forest

Guardians*, 174 F.3d 1193. Courts applying this standard have ordered compliance by the FWS

within weeks or months, not years into the future.  *See, e.g., id.* at 1193 (referring district court on

remand to *Envtl. Def. Ctr. v. Babbitt*, CV-95-2867-R (D.C. Cal. May 6, 1996)(ten days after lifting

of moratorium, court orders Secretary to list species within fourteen days)); *Middle Rio Grande

Conservancy Dist. v. Babbitt*, 206 F. Supp. 2d 1156, 1161, 1194 (D.N.M. 2000)(noting district court

on remand of *Forest Guardians* ordered Secretary "to designate critical habitat for Rio Grande

silvery minnow within 30 days, afterward extended another 90 days," and after invalidating resulting

critical habitat designation under NEPA and ESA, allows rule to remain in operation for 120 days,

"due to the dire circumstances presently threatening the Rio Grande silvery minnow," orders

defendants within that time to issue EIS and propose new rule, "and afterward proceed forthwith to

publish a final rule"); *Southwest Ctr. for Biological Diversity v. Clark*, 90 F. Supp. 2d 1300, 1302

(D.N.M. 1999)(five months is "necessary and reasonable time frame" to reissue critical habitat

designation set aside in 1996 for spikedace and loach minnow); *Southwest Ctr. for Biological

Diversity v. Dept. of Interior*, No. Civ. 99-519 LFG/LCS (D.N.M. Mar. 13, 2000)(FWS enjoined in

March 1997 from enforcing critical habitat designation for Mexican spotted owl; FWS revoked

6

designation in March 1998; court ordered proposed rule be issued within four months and final rule 6 months later).  Given that the FWS had not issued even a new proposed rule for the flycatcher when Plaintiff filed this case in the United States District Court for the Northern District of California on March 15, 2002,[7] almost ten months after the Tenth Circuit set aside the original designation and almost six months after this Court remanded the designation to the FWS, and, indeed, has yet to do so,[8] the Court can not and will not find this action premature.

Thus, the Court finds that the Federal Defendants have violated the Endangered Species Act by failing to redesignate the critical habitat for the southwestern willow flycatcher and that relief is appropriate in the form of deadlines for issuance of the critical habitat designation.  *Forest Guardians* is controlling precedent in this circuit and, thus, in this case.  It applies even if the Court were to categorize the FWS's failure to act as "unreasonably delayed," rather than as "unlawfully withheld."  *Forest Guardians*, 174 F.3d at 1190 ("court must compel only action that is delayed *unreasonably*" (emphasis added)).  Therefore, the FWS must complete the redesignation "as soon as possible," taking into consideration "what work is necessary to publish the new rule and how quickly that can be accomplished," with no consideration given to FWS's budgetary restrictions, its need to comply with other court orders and settlement agreements, and/or its preferred priorities of activities.  *Id.* at 1192-93.

---

[7]  This action was transferred from the Northern District of California to the District of New Mexico by stipulation on August 15, 2002.

[8]  The Court also notes that at this time more than 2 years have passed since the Tenth Circuit vacated the critical habitat designation for the flycatcher and since this Court's remand, exceeding the statutory time limit provided in the Endangered Species Act for initial issuance of a critical habitat designation.

Additionally, in no case may the FWS exceed the statutory time limits set forth in the ESA for the promulgating critical habitat designations: the FWS must issue a proposed critical habitat designation for the flycatcher no later than one year after the date of the Court's Order in this matter, and a final rule no more than one year later. *See* 16 U.S.C. § 1533(a)(3)(A), (b)(3)(B), (b)(6)(A). This is the time limit proposed by SRP, and the Court finds it appropriate to adopt it as the maximum legally allowable deadline, given the changed circumstances regarding the flycatcher since the original critical habitat designation was set aside, including, for example, increased numbers of birds over an expanded range, and SRP's understandable concern that there be ample time allowed for public input during the process.

Finally, the Court finds that the scope of inquiry on remand may encompass any criteria the FWS feels are appropriate in designating a new critical habitat and is not limited to reconsideration only of the economic analysis component. *See Bldg. Indus. Legal Defense Found.*, 231 F. Supp. 2d at 107 ("re-examining the entire critical habitat designations at this time would enable FWS to ensure that its assessments are based upon the 'best scientific data available,' and would allow FWS to consider objections raised to the initial designations by plaintiffs and intervenors"). The Court therefore will not order the FWS to follow any particular procedures or include certain analyses in completing the critical habitat designation, instead leaving these decisions to the FWS in the exercise of its expertise and best judgment, giving full consideration to the issues presented by SRP in this matter. Thus, through a full and fair reconsideration by the FWS of all relevant criteria informing its decision, the Court hopes that future challenges to the reissued flycatcher critical habitat designation will be curtailed.

An Order in accordance with this Memorandum Opinion shall be entered contemporaneously.

_____
**SENIOR UNITED STATES DISTRICT JUDGE**